# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JACQUELYNN (JACKIE) L. JACKS, )
STUART L. REES, Wife and Husband, )
HARLEY J. JACKS and JACQUELYNN )
(JACKIE) L. JACKS, as Next Friend for )
T.J.M., a Minor, and A.J.J., a Minor, )
                                  )
           Plaintiffs, )
                                  )
vs. ) Case No. CIV-15-44-M
                                  )
CMH HOMES, INC., d/b/a OAKWOOD )
HOMES OKLAHOMA CITY and as )
CLAYTON MOBILE HOMES; )
KARSTEN HOMES, a Division of CMH )
MANUFACTURING, INC., and )
VANDERBILT MORTGAGE AND )
FINANCE, INC., )
                                  )
           Defendants. )

# ORDER

Before the Court is defendants CMH Homes, Inc. and CMH Manufacturing, Inc.'s ("CMH Defendants") Motion to Compel Arbitration and Stay Proceedings, filed June 29, 2015. On August 3, 2015, plaintiffs filed their response, and on August 10, 2015, the CMH Defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

On December 7, 2009, plaintiff Jacquelynn (Jackie) L. Jacks ("Jackie Jacks") purchased a 2010 Karsten Model 270 manufactured home from defendant CMH Homes, Inc. Jackie Jacks financed the home through defendant CMH Homes, Inc. under a Manufactured Home Retail Installment Contract ("RIC"). Included in the RIC is an arbitration agreement ("Arbitration Agreement"), which provides, in pertinent part:

A.   Agreement to Arbitrate: Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Contract, any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this Contract, any events leading up to this Contract, the collection and servicing of this Contract, and the interpretation, scope, validity or enforceability of this Contract (with the exception of this agreement to arbitrate, the "Arbitration Agreement"). The interpretation, scope, validity or enforceability of this Arbitration Agreement or any clause or provision herein and the arbitrability of any issues shall be determined by a court of competent jurisdiction. Buyer and Seller agree that the scope of this Arbitration Agreement is intended to cover only Claims brought by Buyer on an individual basis and not on a representative basis as a class action, which includes similar actions that involve the aggregation of individual Claims of Buyer and other persons into a single proceeding. Notwithstanding any other provision of this Arbitration Agreement or any determination as to the enforceability of this Arbitration Agreement or the arbitrability of any Claims, Buyer and Seller expressly agree not to arbitrate any Claims as a class action. This Arbitration Agreement is the only agreement between Buyer and Seller regarding Arbitration, and takes the place of any other agreements to arbitrate.

If Buyer has Claims against others (each, a "Third Party") related to or arising from facts or circumstances covered by this Arbitration Agreement (including but not limited to (i) the design, construction and manufacture of the Manufactured Home, (ii) the advertising and the sale of the Manufactured Home, (iii) the delivery or the installation of the Manufactured Home, and (iv) insurance covering the Manufactured Home or Buyer, including title insurance, where applicable (each, a "Related Claim")), then Buyer and Seller agree to consolidate the Arbitration of Buyer's Claims against Seller, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Arbitration Agreement, *provided, however,* that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Arbitration Agreement. If any Third Party does not agree to be joined in the Arbitration of its Related Claim, then Arbitration under this Arbitration Agreement shall proceed

without that Third Party. Buyer agrees not to arbitrate any Related Claims as a class action. This Arbitration Agreement also covers all co-signors and guarantors who sign this Contract and any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement). Buyer agrees that the Manufactured Home contains parts manufactured outside of the state where the home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce.

*       *       *

L. NOTICE: BUYER UNDERSTANDS THAT THIS ARBITRATION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS CONTRACT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS ARBITRATION AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS ARBITRATION AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVISE BEFORE SIGNING THIS CONTRACT.

Retail Installment Sales Contract at 8-10.

After the manufactured home was installed on Jackie Jacks' land, plaintiffs occupied the home as their residence. On December 23, 2014, plaintiffs filed the instant action against defendants in the District Court of Stephens County, Oklahoma. In their Petition, plaintiffs allege that they suffered physical injury and damage to personal property because the water system in the home was negligently installed and repaired causing the recurring growth of mold in the home, that the home was unreasonably dangerous at the time it left the control of the CMH Defendants, and that the home was not fit for human habitation. Additionally, Jackie Jacks seeks to rescind her purchase of the home and to rescind her agreement to pay the indebtedness incurred to purchase the home. On

3

January 14, 2015, the CMH Defendants removed this case to this Court. Based upon the Arbitration Agreement, the CMH Defendants now move this Court to compel arbitration of plaintiffs' claims and to stay the proceedings pending arbitration.

II.     Discussion

Section 2 of the Federal Arbitration Act ("FAA")[1] provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Under Section 3 of the FAA, if a federal district court determines that a suit is subject to an arbitration agreement, it shall, on application of a party, stay the litigation pending arbitration in accordance with the terms of the agreement. *See* 9 U.S.C. § 3.

> Before granting a stay of litigation pending arbitration, a district court must determine that an agreement to arbitrate exists. 9 U.S.C. §§ 3, 4; *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). The existence of an agreement to arbitrate "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). A court looks to state law principles of contract formation to determine whether an agreement to arbitrate has been reached. *See id.* at 1287. Because the RIC was executed in Oklahoma, the Court finds that the state contract law applicable to this case is that of Oklahoma. Additionally,

---

[1] Plaintiffs do not dispute that the Arbitration Agreement is governed by the FAA.

> "[a]bsent some ambiguity in the [arbitration] agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000)(alteration, quotations omitted).

*1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006).

The CMH Defendants contend that a valid agreement to arbitrate exists between the parties and that plaintiffs' claims fall within the scope of the Arbitration Agreement. The CMH Defendants, therefore, contend that all of plaintiffs' claims should be compelled to arbitration and stayed pending the conclusion of the arbitration.

Plaintiffs assert that the RIC is unconscionable. However, other than making this general, conclusive assertion, plaintiffs provide absolutely no detail or support as to how the RIC, or the Arbitration Agreement contained in the RIC, is unconscionable. Having reviewed the parties' submissions, and the Arbitration Agreement, the Court finds that plaintiffs have not shown that the Arbitration Agreement is unconscionable.[2]

Plaintiffs do not challenge the validity of the Arbitration Agreement, as applied to Jackie Jacks, on any other bases. Additionally, plaintiffs do not dispute that their claims fall within the scope of the Arbitration Agreement. Therefore, having carefully reviewed the parties' submissions, the Arbitration Agreement, and plaintiffs' Petition, the Court finds that a valid agreement to arbitrate exists between the CMH Defendants and Jackie Jacks, that Jackie Jacks' claims fall within the scope of the Arbitration Agreement, and that all of Jackie Jacks' claims should be compelled to arbitration

---

[2] Because plaintiffs have set forth no support for their assertion that the Arbitration Agreement is unconscionable, the Court finds there is no need for any evidentiary hearing on this issue.

5

and any proceedings regarding those claims should be stayed pending the conclusion of the arbitration.

The CMH Defendants assert that the non-signatory plaintiffs Stuart L. Rees, Harley J. Jacks, T.J.M. and A.J.J. are intended beneficiaries of the Arbitration Agreement because they are occupants of the home. Specifically, the CMH Defendants assert that the RIC unambiguously sets forth the intention of Jackie Jacks and defendant CMH Homes for the Arbitration Agreement to cover occupants of the home as intended beneficiaries of the Arbitration Agreement.[3] Plaintiffs, however, assert that the non-signatory plaintiffs are not third party beneficiaries.

Having carefully reviewed the parties' submissions, the Arbitration Agreement, and the case law cited by the parties, the Court finds that the single sentence in the Arbitration Agreement generically referencing "any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement)" is not sufficient to make the non-signatory plaintiffs, who are occupants of the home, third party beneficiaries of the Arbitration Agreement and subject to being compelled to arbitration. These non-signatory plaintiffs have no connection to the RIC other than the fact that they live in the home that Jackie Jacks bought. Additionally, none of the cases cited by the CMH Defendants are factually similar to the instant case and do not support a finding in this case that the non-signatory plaintiffs are third party beneficiaries subject to the Arbitration Agreement.

---

[3]In support of their assertion, the CMH Defendants rely upon the following provision in the Arbitration Agreement:
> This Arbitration Agreement also covers all co-signors and guarantors who sign this Contract and any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement).

RIC at 8.

The CMH Defendants also assert that the non-signatory plaintiffs are bound by the Arbitration Agreement through estoppel, citing to *Carter v. Schuster*, 227 P.3d 149 (Okla. 2009). In *Carter*, the Oklahoma Supreme Court held that an equitable estoppel theory may be used to bind nonsignatories to arbitration agreements when the claims are integrally related to the contract containing the arbitration clause. *See id.* at 153. The *Carter* court set forth the elements of equitable estoppel as follows:

> (1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment.

*Id.* at 154 (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, the Court finds that the CMH Defendants have not satisfied any of the elements of equitable estoppel. There have been no false representations or concealment of facts by the non-signatory plaintiffs. Further, the Court finds no equitable reason why the non-signatory plaintiffs should be bound by the Arbitration Agreement; the non-signatory plaintiffs have engaged in no conduct which would equitably warrant that they be bound by the Arbitration Agreement.

III. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the CMH Defendants' Motion to Compel Arbitration and Stay Proceedings [docket no. 13] as follows:

(A) The Court GRANTS the motion to compel arbitration and stay proceedings as to the claims of plaintiff Jacquelynn (Jackie) L. Jacks, COMPELS arbitration of the claims of plaintiff Jacquelynn (Jackie) L. Jacks, and STAYS further proceedings as to these claims pending arbitration, and

(B) The Court DENIES the motion to compel arbitration and stay proceedings as to the claims of plaintiffs Stuart L. Rees, Harley J. Jacks, T.J.M. and A.J.J.

**IT IS SO ORDERED this 23rd day of September, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE